UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LINWOOD RIVERA SR.,

       Plaintiff,

v.                                 CASE NO. 3:24-cv-640-MMH-SJH

THE CITY OF JACKSONVILLE, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se*, sued the City of Jacksonville and two unnamed Doe police officers. Doc. 1. Plaintiff also sought leave to proceed *in forma pauperis* ("IFP"). Doc. 2. On August 15, 2024, I entered an Order taking Plaintiff's request to proceed IFP under advisement and directing Plaintiff to file an amended application to proceed IFP and an amended complaint ("Prior Order"). Doc. 6. Plaintiff filed an amended application to proceed IFP on August 19, 2024. Doc. 10. He filed an amended complaint the same day, Doc. 9, followed the next day by a second amended complaint ("Second Amended Complaint"), Doc. 11, which is his operative pleading. On September 18, 2024, I entered an Order granting Plaintiff's amended application to proceed IFP and staying the service-of-process provision in 28 U.S.C. § 1915(d) and the service-of-process period in Fed. R. Civ. P. 4(m), pending further Order following review of the Second Amended Complaint under 28 U.S.C. § 1915(e). Doc. 13. For the reasons herein, I now **recommend** this case be **dismissed without prejudice**.

## I.    Background

Plaintiff has sued the City of Jacksonville and two unnamed Doe police officers. Doc. 11 at 2-3.[1] In his original complaint, filed against the same defendants on the *pro se* form designed for negligence actions, Plaintiff invoked diversity jurisdiction. Doc. 1 at 3. I explained in the Prior Order why diversity jurisdiction was lacking. Doc. 6 at 2-3. But I noted that it appeared Plaintiff, who generally challenged his arrest for child abuse in charges that were ultimately dismissed, may have intended to bring a civil-rights claim under 42 U.S.C. § 1983 ("§ 1983"). *Id.* at 3. I explained, however, that even construed liberally, Plaintiff failed to plausibly allege such a claim. *Id.* at 3-9.

I explained in the Prior Order the standards and requirements of pleading in federal court. *Id.* at 4-5, 8-9. I also explained the elements necessary to state a claim under § 1983, that is, "'a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.'" *Id.* at 5 (quoting *Jones v. Waters*, No. 3:24-cv-45-MMH-LLL, 2024 WL 474116, at *2 (M.D. Fla. Feb. 7, 2024)).

Reviewing Plaintiff's allegations, I explained in the Prior Order that "[m]any of Plaintiff's grievances—for example, that he has allegedly been slandered, defamed, or

---

[1] Plaintiff purports to sue the officers both individually and in an official capacity. Doc. 11 at 2-3. However, official-capacity claims are the same as a claim against the City of Jacksonville. *See McCarthy v. City of Cordele, Georgia*, 111 F.4th 1141, 1146 (11th Cir. 2024); *Hodges v. Hunter*, No. 3:23-cv-1375-MMH-PDB, 2024 WL 3890007, at *3 (M.D. Fla. Aug. 21, 2024). As such, references herein to the claims against the officers are intended to apply to the individual-capacity claims, and references herein to the claims against the City of Jacksonville are intended to apply also to any official-capacity claims.

otherwise mistreated in ways that do not violate the Constitution or federal law," were

"not actionable under § 1983." *Id.* at 5 (citing *Charles v. Scarberry*, 340 F. App'x 597,

599-600 (11th Cir. 2009); *Walker v. Atlanta Police Dep't Pub. Affs. Unit*, 322 F. App'x

809, 811 (11th Cir. 2009); and *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002)).

I further explained that a claim for false arrest and/or malicious prosecution in

violation of the Fourth Amendment could, in certain circumstances, underpin a § 1983

claim, but that each such claim requires, among other things, the absence of probable

cause. *Id.* at 5-6 (citing *Jones v. Brown*, 649 F. App'x 889, 890-91 (11th Cir. 2016) and

*Hesed-El v. McCord*, 829 F. App'x 469, 472 (11th Cir. 2020)). Thus, I explained in the

Prior Order,

> to state a § 1983 claim for false arrest or malicious prosecution, a plaintiff
> must plausibly allege the absence of probable cause. *See McCord*, 829 F.
> App'x at 472; *Jones*, 649 F. App'x at 890-91; *see also Davis v. City of Apopka*,
> 78 F.4th 1326, 1333 (11th Cir. 2023) ("The existence of probable cause is
> an absolute bar to a § 1983 claim of false arrest[.]"); *Harris v. Russell*, No.
> 3:23-cv-456-BJD-JBT, 2023 WL 6292572, at *2 (M.D. Fla. Sept. 27,
> 2023) ("To the extent Plaintiff challenges his arrest, he does not allege
> officers lacked probable cause."). To do so, a plaintiff must "allege facts
> permitting a reasonable inference that [the defendant] lacked probable
> cause to arrest him"—vague allegations, or "conclusory buzzwords,"
> such as that a defendant "'made the arrest based on personal feelings, not
> probable cause[,]'" are insufficient. *Le Clerc v. Kuiper*, No. 3:24-cv-24-
> HES-JBT, 2024 WL 1532295, at *3 (M.D. Fla. Apr. 9, 2024); *see also
> McCord*, 829 F. App'x at 472; *Hunter v. Unknown Prosecutor*, No. 3:22-cv-
> 826-BJD-MCR, 2022 WL 3369494, at *3 (M.D. Fla. Aug. 16, 2022).

*Id.* at 6. I noted that Plaintiff failed to plausibly allege the absence of probable cause,

and thus, even liberally construed, failed to state a claim under § 1983 for false arrest

and/or malicious prosecution. *Id.* at 6-7. I also explained in the Prior Order that any §

1983 claim against the City of Jacksonville was subject to the further limitations requiring Plaintiff to plausibly allege, which he had not, "'(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Id.* at 7-8 (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) and citing *Hranek v. Consol. City of Jacksonville*, No. 21-13806, 2022 WL 3221907, at *3 (11th Cir. Aug. 10, 2022)).

Based on the deficiencies identified in the Prior Order, I directed Plaintiff to file an amended complaint, in compliance with the Prior Order and all applicable rules and law, providing further instructions for doing so. *Id.* at 8-9. I identified resources available to *pro se* parties Plaintiff might wish to consider before doing so. *Id.* at 8 n.8. And I cautioned that a failure to do so may result in my recommendation this action be dismissed. *Id.* at 9-10. Following the Prior Order, Plaintiff filed his amended complaint, Doc. 9, and the operative Second Amended Complaint, Doc. 11.

## II.    Standard

In considering whether a party has sufficiently stated a claim under § 1915(e)(2)(B)(ii), the same standards applicable under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule(s)") apply. *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and

conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Rule 8(a) demands "more than an unadorned, the defendant unlawfully harmed me accusation." *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. Courts accept "all factual allegations in the complaint as true" but "need not apply this rule to legal conclusions." *Anthony v. Am. Gen. Fin. Servs., Inc.*, 626 F.3d 1318, 1321 (11th Cir. 2010).

Though *pro se* pleadings are construed liberally: (i) such liberal construction does not permit a court "to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action"; and (ii) *pro se* litigants must "comply with the rules of procedure." *LaCroix v. W. Dist. of Ky*, 627 F. App'x 816, 818 (11th Cir. 2015);[2] *Carvel v. Godley*, 404 F. App'x 359, 361 (11th Cir. 2010).

## III.    Plaintiff's Allegations

Plaintiff alleges in his Second Amended Complaint that he was arrested after an incident with his juvenile daughter. Doc. 11 at 7, 9. His daughter had been living with her mother, but she was getting in trouble. *Id.* Plaintiff brought the child to "be with him to help her, to guide her, teach her and to discipline her within the means of

---

[2] Unpublished opinions are not binding precedent; however, they may be cited when persuasive on a particular point. *See United States v. Futrell*, 209 F.3d 1286, 1289-90 (11th Cir. 2000); 11th Cir. R. 36-2.

the law and to show her how to navigate in the world we live in." *Id.* at 7. On the third day with Plaintiff, the child "began to act out, fussing, cussing, kicking and throwing things[.]" *Id.* at 9.

Plaintiff "reacted to protect himself and his property. He grabbed her and held her down until she calmed some and then told her to go for a walk to calm down then she could return." *Id.* When his daughter returned, she was accompanied by the two uniformed officer-defendants. *Id.* They asked to speak with Plaintiff, who "explained to the officers that he only acted within the means of the law and that he was protecting his property as he has a right to and also his right to consortium of his child[.]" *Id.* He also explained his "right to discipline the child as long as it's within the means of the law." *Id.*

At some point with the officers still present, the child began acting out, calling Plaintiff derogatory names and threatening him and his roommate. *Id.* Plaintiff responded by asking the officers to take his child into custody and telling the officers the child was not allowed inside his apartment without him present. *Id.* Plaintiff contends that "[f]rom that point on the officers became liable" for his daughter "[a]s a [m]atter of [l]aw." *Id.* The officers watched the child attempt to kick down the Plaintiff's door for roughly 30 minutes and then "unlawfully enter his property. The

officers followed behind her to render her aid" before leaving when Plaintiff's roommate got upset. *Id.* at 10. After roughly an hour, the officers arrested Plaintiff. *Id.*[3]

The charges against Plaintiff were later dismissed. *Id.* In the interim, however, the state-court docket reflects that a judge found probable cause within a day of Plaintiff's arrest. *See* Duval County Circuit Court Case No. 16-2023-CF-009100, Doc. 6.[4]

## IV.    Applicable Law

The Second Amended Complaint seeks relief exclusively under § 1983. Doc. 11. As such, federal question jurisdiction exists under 28 U.S.C. § 1331, and the primary jurisdictional defect explained in the Prior Order concerning the original complaint has been remedied. However, despite two amendments following the instructions from the Prior Order, Plaintiff's Second Amended Complaint fails to plausibly allege the absence of probable cause or in turn a claim under § 1983.

As previously discussed, "[t]o state a claim under § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state

---

[3] Though not entirely clear, it appears Plaintiff may allege that the officers at one point left and returned with Child Protective Services before his arrest. *Id.* at 8. Whether they did so or whether the interaction was an uninterrupted hour does not alter the analysis herein.

[4] The Court may take judicial notice of the record of the criminal action against Plaintiff. *See Sporea v. Regions Bank, N.A.*, No. 20-11812, 2021 WL 2935365, at *2 (11th Cir. July 13, 2021); *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015); Fed. R. Evid. 201; *see also Jibrin v. Abubakar*, 814 F. App'x 480, 485 (11th Cir. 2020); *Le Clerc*, 2024 WL 1532295, at *3.

law." *Jones*, 2024 WL 474116, at *2. Here, Plaintiff's claim is predicated on his arrest by two officers on August 27, 2023, which arrest Plaintiff alleges was unlawful. Doc. 11 at 2-3.[5] In certain circumstances, a § 1983 claim can be predicated on a claim of false arrest in violation of the Fourth Amendment. *See Jones*, 649 F. App'x at 890-91.[6]

---

[5] The arrest and booking report from the state-court docket suggests Plaintiff was arrested on August 26, 2023. *See* Duval County Circuit Court Case No. 16-2023-CF-009100, Doc. 1 at 1. The distinction between an arrest date of August 26 or 27 is not material here.

[6] Plaintiff alleges violation of the Fourth, Eighth, Thirteenth, and Fourteenth Amendments. Doc. 11 at 3, 7-8. He claims he was wrongfully arrested without probable cause, and that his resulting detention was "[u]nlawful from the beginning." *Id.* at 7-9. He alleges each officer "was in full uniform including gun, badge and police cruiser" on the date in question of his claims. *Id.* at 4, 7, 9. Insofar as Plaintiff alleges he was wrongfully arrested without a warrant and without probable cause, his claim is best construed as one for false arrest, not malicious prosecution. *See Colon v. Smith*, No. 22-14106, 2024 WL 3898011, at *2, 7 & n.8 (11th Cir. Aug. 22, 2024); *Martin v. Miami Dade Cnty.*, No. 23-10841, 2024 WL 1434329, at *6 (11th Cir. Apr. 3, 2024); *see also Harris v. Hixon*, 102 F.4th 1120, 1133 (11th Cir. 2024). And his false arrest claim is best construed under the Fourth, rather than the Fourteenth, Amendment. *See Land v. Sheriff of Jackson Cnty. Fla.*, 85 F.4th 1121, 1129 (11th Cir. 2023); *Santiago v. Swain*, No. 3:21-cv-886-MMH-MCR, 2023 WL 7166755, at *11 n.15 (M.D. Fla. Oct. 31, 2023); *Bonett v. Cook*, No. 8:20-cv-2106-CEH-TGW, 2021 WL 5114754, at *5 (M.D. Fla. Nov. 3, 2021). Regardless, whether construed under the Fourth or Fourteenth Amendment, and whether construed for false arrest or malicious prosecution, the absence of probable cause is an essential element to any possible claim under the circumstances alleged by Plaintiff. *See Blanck v. City of Altamonte Springs,* No. 6:11-cv-293-Orl-28KRS, 2011 WL 3516071, at *2 (M.D. Fla. Aug. 11, 2011), *aff'd*, 530 F. App'x 931 (11th Cir. 2013); *see also McCord*, 829 F. App'x at 472; *Jones*, 649 F. App'x at 890-91; *Rankin v. Evans*, 133 F.3d 1425, 1430, 1435 (11th Cir. 1998). Plaintiff alleges false arrest and corresponding detention, not forced labor, and thus does not implicate the Thirteenth Amendment. *E.g.*, *Miles v. Krowiak*, No. 3:19-CV-02091, 2023 WL 3486319, at *6 (M.D. Pa. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3480890 (M.D. Pa. May 16, 2023); *see also Dunn v. Prince*, 327 F. App'x 452, 454 (5th Cir. 2009); *Smith v. Penzone*, No. CV17-03892-PHX-DGC(DMF), 2018 WL 3819126, at *4 (D. Ariz. Aug. 10, 2018). And, because he was a pretrial detainee not convicted of a crime, the Eighth Amendment does not apply to Plaintiff's claims. *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985). However, conditions of confinement that would violate the Eighth Amendment for convicted prisoners violate the Fourteenth Amendment as to pretrial detainees. *See id.* at 1574; *see also Evans v. St. Lucie Cnty. Jail*, 448 F. App'x 971, 973 (11th Cir. 2011). To that end, Plaintiff does raise certain allegations concerning the conditions of his confinement. *See* Doc. 11 at 8, 10. In context,

But "[t]he existence of probable cause is an absolute bar to a § 1983 claim of false arrest[.]" *Davis*, 78 F.4th at 1333.

Thus, to state a § 1983 claim for false arrest, a plaintiff must plausibly allege the absence of probable cause. *See id* at 1333, 1341; *see also McCord*, 829 F. App'x at 472; *Jones*, 649 F. App'x at 890-91; *Harris*, 2023 WL 6292572, at *2. To do so, a plaintiff must "allege facts permitting a reasonable inference that [the defendant] lacked probable cause to arrest him"—vague allegations, or "conclusory buzzwords," such as that a defendant "'made the arrest based on personal feelings, not probable cause[,]'" are insufficient. *Le Clerc*, 2024 WL 1532295, at *3; *see also McCord*, 829 F. App'x at 472; *Hunter*, 2022 WL 3369494, at *3. This was outlined in the Prior Order. Doc. 6 at 6.

## V.    Discussion

Though Plaintiff alleges he was arrested "wrongfully and without [p]robable [c]ause[,]" Doc. 11 at 9, such conclusions are neither taken as true nor sufficient to state a § 1983 claim for false arrest, *Le Clerc*, 2024 WL 1532295, at *3; *see also McCord*,

---

these allegations appear to concern harm Plaintiff alleges to have suffered rather than a separate cause of action directed to prison conditions independent of the lawfulness of his arrest. *See id.* at 4, 7-10. Regardless, even if Plaintiff intended to independently challenge the conditions of his confinement, he has not plausibly alleged any basis for these defendants—Jacksonville's police department and the two officers who arrested him—having any responsibility for such conditions. And my recommended disposition, a dismissal without prejudice, does not categorically foreclose timely bringing a later conditions-of-confinement claim. Finally, to the extent Plaintiff alleges he has been slandered, defamed, or otherwise mistreated in ways that do not violate the Constitution or federal law, *see* Doc. 11 at 10, such grievances are not actionable under § 1983, *see Charles*, 340 F. App'x at 599-600; *Walker*, 322 F. App'x at 811; *Knight*, 300 F.3d at 1276.

829 F. App'x at 472; *Hunter*, 2022 WL 3369494, at *3. Probable cause, which constitutes "an absolute bar to a § 1983 claim of false arrest," exists where "the totality of the circumstances known to the officers could persuade a reasonable officer that there is a 'substantial chance of criminal activity' by the person who is arrested." *Davis*, 78 F.4th at 1333-34.

A "substantial chance" means just that and does not require an *actual* showing of criminal conduct. *Id.* at 1334-35. The probable-cause standard is not high. *Id.* at 1334. It "requires less than a preponderance of the evidence" and "'does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed[.]'" *Id.* (citation omitted). Thus, "probable cause does not require that it be more likely than not the person arrested for a crime is actually guilty of it." *Id.* Indeed, even "evidence of every element of a crime is not required for a showing of probable cause." *Id.* at 1335. As such, that charges against a plaintiff were ultimately dropped "is 'of no consequence' to the probable cause determination." *Wiltz v. Grieves*, No. 8:24-cv-1425-WFJ-AEP, 2024 WL 2978342, at *1 n.1 (M.D. Fla. June 13, 2024); *see also Davis*, 78 F.4th at 1334.

Probable cause does not require officers "'to perform error-free investigations or independently investigate every proffered claim of innocence.'" *Davis*, 78 F.4th at 1335 (citation omitted). Nor "are officers expected to be judges" or "'required to resolve every inconsistency found in the evidence.'" *Id.* (citation omitted). Thus, officers need not resolve conflicting evidence in a suspect's favor and "simply are not required 'to

rule out a suspect's innocent explanation for suspicious facts.'" *Id.* at 1336 (citation omitted); *see also id.* at 1342 ("[W]here the initial facts show probable cause, officers are not required to forego making an arrest because the suspect offers an innocent explanation for those facts[,]" and "[o]fficers are not required to believe what the suspect says or to launch into an investigation of his claim."). And probable cause turns on the totality of the circumstances, meaning "even where officers see or hear some exculpatory evidence," they can "still conclude probable cause exists[.]" *Id.* at 1343.

It is thus settled precedent in the Eleventh Circuit that: (i) "an officer is not required to be able to prove every element of a crime before making an arrest"; (ii) "an officer is not required to have specific evidence of a suspect's subjective intent before making an arrest when the suspect's conduct gives rise to probable cause"; (iii) "an officer is not required to resolve every inconsistency in the evidence before making an arrest"; and (iv) "before making an arrest an officer is not required to believe, or to rule out, a suspect's innocent explanation for suspicious facts." *Id.* at 1349.

Similarly, officers generally need not consider potential affirmative defenses to have probable cause. *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) ("A law enforcement officer is not required to resolve every inconsistency found in the evidence. Moreover, police officers aren't lawyers; we do not expect them to resolve legal questions or to weigh the viability of most affirmative defenses. So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not

11

vitiate a finding of probable cause.") (internal citation omitted); *see also Davis,* 78 F.4th at 1340; *Rickerson v. Jeter*, No. 21-12563, 2022 WL 2136017, at *3 (11th Cir. June 14, 2022) ("We have repeatedly held that the existence of facts that give rise to an affirmative defense does not defeat probable cause, actual *or* arguable."); *Morris v. Town of Lexington Ala.*, 748 F.3d 1316, 1325 (11th Cir. 2014).

For these reasons, "'[t]he probable cause decision, by its nature, is hard to undermine, and still harder to reverse.'" *Davis,* 78 F.4th at 1338, 1350-51. And the already forgiving standard is even more-so at the scene of domestic disputes, which present special challenges for officers and the "prototypical example of cases" where courts cannot apply hindsight to or armchair quarterback an on-the-scene determination by officers. *Id.* at 1337, 1349-50. In short, a § 1983 false arrest claim necessarily fails absent well-plead facts plausibly showing it is "one of those exceedingly rare cases where the probable cause decision is undermined to the point of reversal." *Id.* at 1338. This is not such a case.

Plaintiff has not plausibly alleged the absence of probable cause for crimes including child abuse without bodily harm under Fla. Stat. § 827.03(2)(c),[7] battery

---

[7] Plaintiff's original complaint alleged he was charged with child abuse without bodily harm, Doc. 1 at 6, but such allegation does not appear in his Second Amended Complaint. The arrest and booking report from the state-court docket reflects a charge of child abuse without great bodily harm under Fla. Stat. § 827.03. *See* Duval County Circuit Court Case No. 16-2023-CF-009100, Doc. 1 at 2. Regardless, under the "any-crime rule" that applies to claims of false arrest (though not malicious prosecution), an officer is insulated "'from false-arrest claims so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred." *Garcia v. Casey*, 75 F.4th 1176,

under Fla. Stat.§ 784.03, and child neglect without great bodily harm under Fla. Stat. § 827.03(2)(d).

First, as to child abuse without bodily harm under Fla. Stat. § 827.03(2)(c), and battery under Fla. Stat.§ 784.03, Plaintiff admits that, following a dispute with his minor daughter he "reacted to protect himself and his property" and "grabbed her and held her down until she calmed some and then told her to go for a walk to calm down then she could return[,]" which she did, accompanied by the two officers who arrested him. Doc. 11 at 9. He admits that he told the officers he had disciplined his child and had acted to protect his property. *Id.* These undisputed facts "could persuade a reasonable officer that there" was at least "a 'substantial chance'" of criminal activity, *see Davis*, 78 F.4th at 1334-35, in violation of Fla. Stat. § 827.03(2)(c)[8] and/or Fla. Stat.§ 784.03.[9]

---

1187 (11th Cir. 2023) (quoting *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020)); *see also Colon*, 2024 WL 3898011, at ** 2, 7 & n.8.

[8] Under Florida law, child abuse, committed knowingly or willfully, is unlawful. Fla. Stat. § 827.03(2)(c). For purposes of § 827.03, child abuse includes "[a]n intentional act that could reasonably be expected to result in physical or mental injury to a child[.]" Fla. Stat. § 827.03(b)2. Under the plain language of the statute, "actual injury is not required." *Stillions v. State*, 297 So. 3d 681, 684 (Fla. 1st DCA 2020). Rather, an intentional act that could reasonably be expected to result in physical or mental injury suffices. *Id.*

[9] "Florida simple battery 'occurs when a person: 1. Actually and intentionally touches or strikes another person against the will of the other; or 2. Intentionally causes bodily harm to another person.'" *United States v. Diaz-Calderone*, 716 F.3d 1345, 1347 (11th Cir. 2013) (quoting Fla. Stat. § 784.03(1)(a)); *see also Huebner v. Bradshaw*, 935 F.3d 1183, 1188 (11th Cir. 2019).

Plaintiff appears to suggest officers lacked probable cause because he explained to them that he had only reacted to protect his property and parentally discipline his child. Doc. 11 at 9. But officers generally need not consider potential affirmative defenses to have probable cause. *See Paez*, 915 F.3d at 1286; *see also Davis,* 78 F.4th at 1340; *Rickerson*, 2022 WL 2136017, at *3. And while a parent may assert his "parental right to administer 'reasonable' or 'nonexcessive' corporal punishment, i.e., a typical spanking, in a prosecution for simple child abuse" such is not an absolute immunity but rather an affirmative defense. *See Raford v. State*, 828 So. 2d 1012, 1020-21 (Fla. 2002). Similarly, while "Florida law recognizes a parental privilege that permits a simple battery in the administration of discipline by one in authority over a child" such potential privilege does not vitiate probable cause for a battery charge. *See Sada v. City of Altamonte Springs*, No. 6:09-cv-506-Orl-31KRS, 2010 WL 5209309, at *5 (M.D. Fla. Dec. 16, 2010), *aff'd*, 434 F. App'x 845 (11th Cir. 2011).[10]

---

[10] Reasonable parental punishment is merely an affirmative defense in the context of a child abuse charge. *See Raford*, 828 So. 2d at 1020-21. By comparison, the potential parental privilege to a battery (but not a child abuse) charge does not appear to be a true "affirmative defense." *See id.* at 1013-14, 1020; *see also Morris v. State*, 228 So. 3d 670, 673 (Fla. 1st DCA 2017). But in *Sada*, this Court treated such "parental privilege" as akin to an affirmative defense, at least for purposes of the probable cause principle that officers need not determine applicability of a potential defense when assessing probable cause. *See Sada*, 2010 WL 5209309, at *5 ("Although the instant arrest was based on probable cause rather than a warrant, and the defense at issue was the parental privilege rather than the statute of limitations, the same rationale would apply in this case. … [T]he police officers were not required to assess the applicability of the parental privilege to determine whether they had probable cause to make an arrest."). The Eleventh Circuit agreed and affirmed. *Sada*, 434 F. App'x at 850.

For example, in *Sada*, the plaintiff sued for false arrest after being arrested in a parking lot outside a store. *Id.* at *1. He and his son had a confrontation over a cell phone. *Id.* He said "he tried to grab the cell phone away from his son and, in doing so, his hand hit his son's shoulder blade"; witnesses reported that he "had lost his temper inside the store and had hit a young man." *Id.* The charges against him, including battery, were not pursued. *Id.* The plaintiff argued "his arrest was unlawful because Florida law recognizes a parental privilege that permits a simple battery in the administration of discipline by one in authority over a child." *Id.* at *5. This Court disagreed, holding "the police officers were not required to assess the applicability of the parental privilege to determine whether they had probable cause to make an arrest." *Id.* The Eleventh Circuit agreed with this Court and affirmed. *See Sada*, 434 F. App'x at 850.

Even if consideration of the parental privilege were required, the result would be the same. *See Davis*, 78 F.4th at 1340-41 (declining to decide whether self-defense under circumstances was an affirmative defense or an element of the crime because probable cause existed regardless). As discussed, probable cause neither requires officers to have believed, nor investigated, innocent explanations offered by Plaintiff. *See id.* at 1335-36, 1342, 1349. Moreover, officers are given leeway in often-confusing domestic disputes. *Id.* at 1350. And "'drawing a line between prohibited child abuse and permissible disciplinary corporal punishment is not an easy task.'" *Sada*, 434 F. App'x at 850 (citation omitted). Given the totality of the circumstances, even accepting

Plaintiff's version of events (which the officers were not required to do), application of any parental privilege or affirmative defense was not sufficiently settled to negate the otherwise apparent crimes. Rather, officers could have construed what Plaintiff admits—that he "reacted to protect himself and his property" and "grabbed [his daughter] and held her down" for a period of time—as beyond reasonable parental discipline. *See id.* (explaining privilege under Florida law requires both that conduct is "intended to be disciplinary and does not rise to the level of abuse"); *see also Czapla v. State*, 957 So. 2d 676, 680 (Fla. 1st DCA 2007) (holding "the form of discipline used, intentionally kicking [in the side a 15-year old] child who is lying on ground" was "as a matter of law, not reasonable corporal discipline"). Whether officers would have been correct in such an "admittedly complex" area of law, *see Czapla*, 957 So. 2d at 678; *see also Sada*, 434 F. App'x at 850, is not dispositive, *see Davis*, 78 F.4th at 1335. But further reinforcing that they could reasonably have assessed probable cause, a state-court judge did so within a day of Plaintiff's arrest. *See* Duval County Circuit Court Case No. 16-2023-CF-009100, Doc. 6; *see also Le Clerc*, 2024 WL 1532295, at *3 ("A review of Plaintiff's state court docket shows that soon after his arrest, the trial court issued a finding of probable cause …. Again, Plaintiff fails to allege a plausible false arrest claim because he does not allege facts permitting a reasonable inference that Defendant lacked probable cause to arrest him[.]").

Moreover, the arresting officers had more than the admitted physical contact with Plaintiff's daughter. They observed, first-hand, as Plaintiff demanded the child be taken into custody and then refused to let her enter his apartment. Doc. 11 at 9. They

observed for about 30-minutes as the locked-out child tried to kick down the door but was not allowed back inside by her father. *Id.* at 10. Only after about an hour of the dispute—in which Plaintiff insisted the child was not lawfully permitted to reenter his apartment—was he arrested. *Id.* Those facts, in addition to contributing to the totality of the circumstances as to child abuse, also give rise to probable cause for child neglect without great bodily harm under Fla. Stat. § 827.03(2)(d).[11]

Though willful conduct or culpable negligence is required, child "[n]eglect may be based on a single incident or omission that results in, or could reasonably be expected to result in, serious physical or mental injury to a child." *State v. Wynne*, 794 So. 2d 642, 643 (Fla. 2d DCA 2001). For example, leaving a young child at the exit ramp of a highway and driving off, even as a disciplinary tactic when later returning to retrieve the child, can suffice. *See id.* at 643-44. And the child-neglect statute recognizes no parental-discipline exception, either as a privilege or an affirmative defense. *See id.* at 644 ("Neither the legislature nor the courts have ever created a privilege that would allow parents to discipline a child by failing to provide the child with 'food, nutrition, clothing, shelter, supervision, medicine, and medical services

---

[11] Under Florida law child neglect includes the failure or omission of a caregiver "to provide a child with the care, supervision, and services necessary to maintain the child's physical and mental health, including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine, and medical services that a prudent person would consider essential for the well-being of the child[.]" Fla. Stat. § 827.03(e). Child neglect "may be based on repeated conduct or on a single incident or omission that results in, or could reasonably be expected to result in, serious physical or mental injury, or a substantial risk of death, to a child." *Id.*

that a prudent person would consider essential for the well-being of the child.'") (citation omitted). Having waited an hour but with Plaintiff's daughter still locked out of the apartment and confined to the street, officers could reasonably have been persuaded there was at least a "a 'substantial chance'" Plaintiff was committed to withholding shelter and other living necessities from his daughter over the dispute.

Moreover, even absent *actual* probable cause, officers may prevail on a qualified immunity defense to a § 1983 claim of false arrest if the lesser *arguable* probable cause exists. *See Brown v. Ridgway*, 845 F. Supp. 2d 1273, 1279 (M.D. Fla. 2012) (dismissing claims against officers who had arguable probable cause for arrest under § 1915); *see also Cottam v. City of Wildwood*, 750 F. App'x 791, 793-94 (11th Cir. 2018); *Fish v. Brown*, 838 F.3d 1153, 1167 (11th Cir. 2016).[12] "'*Arguable* probable cause exists if, under all of the facts and circumstances, an officer reasonably *could*—not necessarily *would*—have believed that probable cause was present.'" *Fish*, 838 F.3d at 1167 (citation omitted). In addition to the lesser arguable probable cause standard, the lack of precedent requiring consideration of parental privilege (and indeed the contrary authority discussed suggesting such consideration is not required) further reflects the officers' qualified immunity here. *See Sada*, 434 F. App'x at 851. And dismissal under § 1915 is appropriate where, as here, a qualified immunity defense is apparent on the face of a

---

[12] The any-crime rule discussed earlier, *see supra* note 7, applies to an arguable-probable cause analysis as well, *see Garcia*, 75 F.4th at 1187.

pleading. *See Barcelona v. Burkes*, No. 21-14285, 2022 WL 15137410, at *2 (11th Cir. Oct. 27, 2022); *Brown*, 845 F. Supp. 2d at 1279.

Finally, for the reasons discussed above (with the exception of qualified immunity),[13] any claim against the City of Jacksonville likewise fails. But that claim is also subject to further limitations. "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell*, 392 F.3d at 1289; *see also Hranek*, 2022 WL 3221907, at *3. Plaintiff does not plausibly allege such a basis for § 1983 liability against the City of Jacksonville. *See generally* Doc. 11.

## VI.    Conclusion

For the foregoing reasons, Plaintiff's Second Amended Complaint is deficient and is due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii). I thus recommend that this case be dismissed without prejudice.

Accordingly, it is respectfully **recommended** that:

1.    This case be **dismissed without prejudice**.

2.    The Clerk of Court be directed to terminate any pending motions and close the file.

---

[13] Unlike the individual defendants, qualified immunity is not available as a defense to the City of Jacksonville. *See May v. Pritchett*, No. 22-10147, 2022 WL 16753599, at *5 (11th Cir. Nov. 8, 2022).

## Notice

"Within 14 days after being served with a copy of [a] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations impacts the scope of review by a district judge and by an appellate court. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); 11th Cir. R. 3-1. "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). "A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation ... waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions[.]" 11th Cir. R. 3-1.

**DONE AND ENTERED** in Jacksonville, Florida, on October 9, 2024.

Samuel J. Horovitz
United States Magistrate Judge

20

Copies to:

The Honorable Marica Morales Howard, United States District Judge

*Pro Se* Plaintiff